## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIAM LONDON                          :

                                        :

v.

                                        : Civil Action WMN-06-1521

MICHAEL O. LEAVITT,                     :
SECRETARY OF HEALTH AND
HUMAN SERVICES                          :


### MEMORANDUM

    Before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.  Paper No. 4.  The motion is fully briefed.  Upon review of the pleadings and the relevant case law, the Court determines that no hearing is necessary and that the motion must be granted.

### I. FACTUAL BACKGROUND

    In this action, Plaintiff raises claims of religious and age discrimination, as well as a claim of retaliation.  Plaintiff has worked in the Office of the Actuary (OACT) for the Centers for Medicare and Medicaid Services for 19 years.  Plaintiff is Jewish and was born in 1953.  The current head of OACT is Richard Foster who has been in that position for about ten years.  Foster is Presbyterian and was born in 1949.

    On March 16, 2005, Plaintiff applied for a position as a Supervisory Actuary in the Medicare and Medicaid Cost Estimates Group (MMCEG) of the OACT.  At the time, MMCEG had three supervisors: Solomon Mussey, who is Jewish and was born in 1950; Clare McFarlane, who is Catholic and was born in 1954; and

Suzanne Codespote, who is also Catholic and was born in 1967.  As
part of a major expansion and reorganization, MMCEG was to be
divided into four divisions.  Under the new structure, Mussey
would serve as the MMCEG director, and McFarlane and Codespote
would become directors of two of the divisions.  This left two
new supervisory positions available, for which five other
individuals applied, in addition to Plaintiff.  After a series of
interviews, the positions were awarded to Richard Coyle, whose
religion is unknown and who was born in 1962, and John Shatto,
whose religion is also unknown and who was born in 1968.

     Plaintiff had previously applied for a supervisor position
in the fall of 2004.  That position was awarded to Suzanne
Codespote.  Plaintiff alleged that his non-selection in 2004 for
the position that Codespote filled was the result of age-based
discrimination and he initiated alternative dispute resolution
through his employer's Equal Employment Opportunity (E.E.O.)
office.  Plaintiff voluntarily withdrew his complaint, however,
on November 10, 2004.

     Plaintiff avers that he engaged in a second E.E.O. activity
that he believes may also have given his employer a reason to
retaliate against him.  Some time in the latter part of 2004,
Plaintiff offered some advice to, and made some informal
inquiries on behalf of, an intern who was not offered permanent
employment at the end of her internship.  Plaintiff believes that
the fact that the intern was Jewish may have been a factor in her
not obtaining permanent employment.  No formal E.E.O. action was

taken, however.

After he was denied the promotion to one of the two supervisor positions in March of 2005, Plaintiff filed a second formal administrative complaint on May 26, 2005.  After the EEOC ruled in favor of his employer, Plaintiff filed the instant suit on June 14, 2006.  Defendant has now moved to dismiss this action, or in the alternative, for summary judgment.  With this motion, Defendant has submitted the materials collected as part of Plaintiff's formal administrative proceedings.  Plaintiff, who is proceeding <u>pro se</u>, opposed the motion without submitting any additional materials, but Plaintiff's own sworn declarations from the administrative proceedings are among the materials submitted by Defendant and the Court has considered those declarations in resolving this motion.

## II. LEGAL STANDARD

A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters, however, the motion is treated as one for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Gadsby by Gadsby v. Grasmick</u>, 109 F.3d 940, 949 (4th Cir. 1997); <u>Paukstis v. Kenwood Golf & Country Club, Inc.</u>, 241 F. Supp. 2d 551, 556 (D. Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Catawba Indian Tribe of S.C. v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  See United States v. Diebold, 369 U.S. 654, 655 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  See Anderson, 477 U.S. at 256; Celotex Corp., 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the

4

nonmovant's position will not defeat a motion for summary judgment." <u>Detrick v. Panalpina, Inc.</u>, 108 F.3d 529, 536 (4th Cir. 1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

## III. DISCUSSION

There is no direct evidence of either religious discrimination or retaliation for prior E.E.O. activity.  As the only possible example of direct evidence of age discrimination, Plaintiff points to comments made by Foster to the effect that "it is important to bring up the young people in the office." Pl.'s Aff. ¶ 7.  Courts have held, however, that this type of comment is not evidence of discriminatory intent.  In <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507 (4th Cir. 1994), there was evidence that the plaintiff's supervisor had stated that "there comes a time when we all have to make way for younger people." <u>Birkbeck</u> at 512.  The Fourth Circuit held that this statement was "irrelevant" to the issue of age discrimination.  <u>Id.</u>  "[T]he statement in itself creates no inference of age bias [and] reflects no more than a fact of life and as such is merely a truism that carries with it no disparaging undertones.  <u>Id.</u>  The court reasoned,

> statements about age may well not carry the
> same animus as those about race or gender.
> Unlike race or gender differences, age does
> not create a true we/they situation - barring

> unfortunate events, everyone will enter the
> protected age group at some point in their
> lives.  [The supervisor] was himself in the
> protected category.  His remark should be
> seen for the non-actionable reflection on
> generational passage that it was.

Id. (internal quotations omitted).  Similarly here, Foster,
himself in the protected category and, in fact, four years older
than Plaintiff, was making the unremarkable observation that the
leadership of the office must eventually transition to a new
generation.

In the absence of direct evidence, Plaintiff must rely on
the traditional burden shifting scheme of proof of McDonnell
Douglas v. Green, 411 U.S 792 (1973).  Under McDonnell Douglas,
the plaintiff has the initial burden to establish a prima facie
case of discrimination by a preponderance of the evidence.  Texas
Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  Once the
plaintiff does that, the burden shifts to the employer to
articulate a legitimate non-discriminatory reason for its action.
Id. at 254.  The defendant's burden "is one of production, not
persuasion; it can involve no credibility assessment."  Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  "If
the employer meets this burden, 'the presumption of
discrimination created by the prima facie case disappears from
the case' and the plaintiff must prove that the 'proffered
justification is pretextual.'"  Warch v. Ohio Cas. Ins. Co., 435
F.3d 510, 514 (4th Cir. 2004) (quoting Mereish v. Walker, 359
F.3d 330, 359 (4th Cir. 2004)).

To establish a prima facie case of age discrimination,

Plaintiff "must demonstrate that (1) he was a member of a protected class, i.e., that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996)).  Defendant has conceded, for the purpose of its motion, that Plaintiff can establish a prima facie case of age discrimination.  Mot. 7.

The prima facie case for a claim of discrimination based on religion is similar to that of one based on age.  Here, instead of showing that a desired position was given to a similarly qualified younger individual, Plaintiff's inferential case might consist of evidence that the position was given to someone outside of the Plaintiff's religion.  See Hassman v. Harvey, Civ. No. 05-cv-56, 2005 WL 3134061 at *6 (E.D. Va. Nov. 23, 2005).  It is less clear that Plaintiff would be able to establish a prima facie case of religious discrimination.  Plaintiff does not identify the religious affiliation of the two individuals who were awarded the supervisory positions.  The Court also notes that the individual who was the official decision maker in

awarding the new positions was himself Jewish.[1]  Most
significantly, Plaintiff readily acknowledges that the individual
that he identifies as the selecting official, Richard Foster, did
not intentionally discriminate against him.  "I do not assert
that [Foster] has acted intentionally.  I assert that his
practice and policy of emphasizing collegiality among his
managers has resulted in unintentional discrimination against
me."  Pl.'s Aff. 1-2.[2]

       As to the elements required to establish a prima facie case
of retaliation, they are: "'(1) plaintiff engaged in protected
activity, such as filing an EEO complaint; (2) the employer took
adverse employment action against plaintiff; and (3) a causal
connection existed between the protected activity and the adverse
action.'"  Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)
(quoting Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)).  One
of the most frequently employed means of establishing a casual
connection is by noting the temporal proximity of the protected
activity and the adverse employment action.  In Williams v.
Cerberonics, 871 F.2d 452 (4th Cir. 1989), the Fourth Circuit
held that a plaintiff had established a causal connection where

_____

       [1] As discussed below, the decision as to which two
candidates to award the supervisor positions was a consensus
decision of the six individuals in the "Management Team."  Foster
states that the individuals were then "formally selected by Sol
Mussey."  Foster Aff. 4.  Plaintiff, however, names Foster as the
management official responsible for the decision.  Pl.'s Aff. 1.

       [2] Of course, this statement also undercuts Plaintiff's age
discrimination claim.

she was fired approximately four months after filing a
discrimination charge.  Here, there is a similar temporal span.

Thus, assuming that Plaintiff has established a prima facie
case of at least age discrimination and retaliation, the burden
of production shifts to Defendant to articulate a legitimate non-
discriminatory reason why Plaintiff was not promoted to the
supervisory position.  Defendant has done just that.  In
considerable detail, Defendant explains the interview and
decision-making process that led to the selection of Coyle and
Shatto.  The record reflects that in light of the specific set of
skills, abilities and competencies that Foster determined to be
critical for these positions, Plaintiff was simply not as
qualified as the candidates that were selected.

Defendant represents, the record fully supports, and
Plaintiff does not dispute, that Foster emphasizes a team-based
approach to management.  Foster explains that, while the MMCEG
now has four separate divisions, each with its own supervisor,
the work is often shared between divisions to balance unequal
workloads.  Also, work teams are frequently formed with members
from drawn from different divisions.  Furthermore, managers are
required to work together as a Management Team and Foster
encourages them to learn about and share responsibility for each
other's projects.  The Management Team has frequent meetings
where they brainstorm ideas and whenever possible, reach
consensus decisions.  This team approach, in Foster's view,
requires supervisors to be as strong in "communication,

management, leadership, and proactivism" skills as they are in the technical aspects of their job assignments.  Foster Aff. 3.

Consistent with this team approach, the March 2005 selection process for the two new supervisors was made by consensus of the Management Team.  All six members of the Management Team[3] interviewed the potential candidates and then met together to discuss their findings.  All six concurred that Richard Coyle was the best qualified candidate.  Five members (all but Foster) concurred that John Shatto was the second most qualified.  Foster had Shatto tied for second place with another candidate but, after further discussion, agreed that Shatto was the stronger of the two.

Not one of the six members of the Management Team ranked Plaintiff among the top candidates.  All did have good things to say about Plaintiff.  Foster stated that he believed Plaintiff was a "valuable member of the office who has made many important contributions . . . .  In his favor are his strong technical skills and willingness to tackle any project."  Foster Aff. 8-9.  Mussey stated that Plaintiff is "very good technically and has a rapport with some employees and helps out when needed."  Mussey Aff. ¶ 7.  These strengths were offset, however, by certain

_____

[3] The Management Team involved in the hiring consisted of: Foster; Mussey; McFarlane; Codespote; Stephen Heffler, group director of the National Health Statistics Group (NHSG); and Mark Freeland, a deputy group director of NHSG.  Both NHSG and MMCEG are part of the OACT.  Foster explains that NHSG hires mostly economists and MMCEG mostly actuaries, and the interdisciplinary team approach allows OACT to take advantage of the relative strengths of each profession.  Foster Aff. 6.

limitations.  Foster noted Plaintiff's "difficulty in seeing
others' views on issues, his inflexibility on inconsequential
matters, his lack of tact, and his difficulty with communications
and in dealing with certain other staff members.  While the
managers noted that [Plaintiff] had worked to improve certain of
these limitations, overall we were mixed in our views as to
whether he would be a 'good enough' candidate for a managerial
position."  Id. 9.

Each individual that interviewed the candidates has
submitted an affidavit explaining, with considerable specificity,
why they ranked the candidates as they did.  These explanations
are wholly consistent with the team approach outlined by Foster
and, furthermore, several of the affidavits are supported with
contemporaneous notes of the interviews.

In light of this record, the Court finds that Defendant has
advanced a legitimate, non-discriminatory reason for the
selection of Coyle and Shatto over Plaintiff.  Plaintiff,
therefore, has the burden of showing pretext.  This, Plaintiff
has not done.

The gist of Plaintiff's pretext argument is the expression
of his own opinion that he should have been selected because he
had "much more experience" than the two candidates that were
selected.  Pl.'s Aff. ¶¶ 5, 6.  He also relates in his opposition
that he was the "shining star" of the office before Foster took
over OACT ten years ago and was "promoted to a GS 15 probably
faster than anyone else in the history of our office."  Opp. 4.

11

This Court has frequently noted, however, that where an employer
has proffered an explanation for its hiring decision based upon
relative qualifications, a plaintiff's unsupported assertion of
superior qualifications is insufficient to create a triable issue
of pretext. Gbenoba v. Montgomery Co. Dept. of Health Human
Servs., 209 F. Supp. 2d 572, 578 (D. Md. 2002) ("the plaintiff's
only evidence of pretext is found in his unsupported and self-
serving assertions of superior qualifications, which simply
cannot generate a triable issue"); Jamil v. White, 192 F. Supp.
2d 413, 419 (D. Md. 2002) ("Where a defendant produces proof that
its reason for not promoting a Title VII plaintiff was that it
selected the best qualified candidates for the position, the
assertion by the plaintiff that he was more qualified for the
positions than the persons actually selected is insufficient to
demonstrate pretext."); Bostron v. Apfel, 104 F. Supp. 2d 548,
556 (D. Md. 2000) (same).

Here, Plaintiff has not presented admissible evidence that
he was a better qualified candidate. As Defendant notes,
Plaintiff makes no citation to any record evidence in support of
his assertions. For example, Plaintiff claims to have led more
projects than anyone else, but submits no admissible evidence in
support of that claim.[4] On the issue of communication skills,

_____

[4] As noted above, Plaintiff did not submit any documents or
affidavits with his opposition. Had Plaintiff placed the
assertions in his pleadings in the form of a sworn affidavit, it
is doubtful that many of those assertions would have an adequate
foundation to be admissible. See, e.g., Compl. 4 ("to the best
of my knowledge, Shatto has little or no team leadership

Plaintiff acknowledges that this "was [his] biggest weakness" and "[c]ommunicating complicated concepts is a challenge."  Opp. 6. While Plaintiff states that he has made improvement in that area in recent years and can "do a very good job communicating complicated concepts," he does not state that he does a <u>better</u> job at communicating than the selectees.

Furthermore, his assertion that he was a "shining star" under the previous head of the OACT, were it supported, would not establish his superior qualifications under the management style adopted by Foster.  Plaintiff seems to acknowledge that Foster is looking for a different skill set in his supervisors than Foster's predecessor.  <u>See</u> Pl.'s Aff. ¶ 4 ("Rick has stated many times that an important factor in selecting a manager is to select a person who has formed coalitions with others in the office."); Opp 5 ("[Foster] also said in my interview . . . that he was going to select managers that got along very well with each other.  He said that in the past, managers had not gotten along very well, and he did not want that situation to repeat itself.").  Plaintiff may or may not agree that this ability to function well in a team setting should be an important criteria, but as long as the criteria is not based upon impermissible discrimination, it is not unlawful and the Court cannot substitute its own or the Plaintiff's criteria for that of the employer.  <u>See</u> <u>Causey</u>, 162 F.3d at 801 ("this Court is not in a

experience") (emphasis added).

13

position to second guess executive hiring decisions that are
based on legitimate, non-discriminatory rationales").

Plaintiff's other attempted means by which to establish
pretext is to point to inconsistencies or inaccuracies in the
explanation given for his non-selection.  Providing evidence that
an employer's legitimate reason for non-selection was only
formulated after the fact is one way to show pretext.
See Gbenoba, 209 F. Supp. 2d at 577 ("an employee can establish
that the defendant's proffered reason, although factually
supported, was not the actual reason for its decision, e.g., the
plaintiff was denied a promotion based on race, and the fact that
he was not as qualified as the successful candidate arises as a
post hoc rationalization for the decision").  The Court, however,
finds complete congruence between the primary rationale given for
the selection of Coyle and Shatto over Plaintiff in this
litigation, and the rationale given at the time of the decision.
The inconsistencies highlighted by Plaintiff are either
differences in subjective opinion,[5] or a misreading of the

---

[5] For example, several of the interviewers noted that
Plaintiff had some weaknesses in interpersonal skills.  See
Mussey Aff. ¶ 7 (noting that "[Plaintiff] is insensitive at times
when talking to others"); Freeland Aff. ¶ 5 ("I have seen
[Plaintiff] at meetings be witty in ways that could be
misinterpreted by some").  Plaintiff responds to these
observations by opining, "I do not believe that this is true.  I
get along very well with everyone in the office. . . . I think
that just about everyone in the office likes me."  This simply
indicates a difference of opinion and does not create any
inference of pretext.

record.[6]   There are no inconsistencies that would support an inference of pretext.

Finding that Defendant has presented a legitimate non-discriminatory reason for the non-selection of Plaintiff as a supervisory actuary, and that Plaintiff has presented no evidence upon which the Court could conclude that this reason was pretextual, the Court must grant summary judgment in Defendant's favor as to Plaintiff's age discrimination, religious discrimination, and retaliation claims.

A separate order will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: January 31, 2007

---

[6] Plaintiff accuses Foster of falsely representing that he (Foster) had previously promoted Plaintiff to a GS 15.  Opp. 2. Plaintiff states that this promotion actually occurred under Foster's predecessor and that Foster had no role in that decision.  Id.  Foster, however, did not claim that he had promoted Plaintiff.  In the motion for summary judgment, Defendant's counsel did misstate that "it was Foster who originally promoted Plaintiff to a non-supervisory GS-15 position."  Mot. 15.  What Foster actually stated in his affidavit, however, was that he "concurred with the promotions" of several Jewish employees, including that of Plaintiff.  Foster Aff. 13-14.